**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **BARRY MCCALL;** | ) |
| **CHERYL MCCALL** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )  **Civil Action No: 1:19-cv-01136** |
| | ) |
| **THE TORO COMPANY;** | ) |
| **WILSON-DISMUKES, INC.,** | ) |
| | ) |
| **Defendants.** | ) |

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, defendant, The Toro Company ("Toro") gives notice of its removal of this action from the Mobile County Circuit Court to the United States District Court for the Southern District of Alabama, Southern Division. In support of this Notice, defendant shows the Court the following:

**A.     This Notice of Removal is Timely**

1.      On or about November 26, 2019, there was filed in the Mobile County Circuit Court a civil action, bearing the caption shown above and, as assigned by that court, the case number 02-CV-2019-903150.00. A true and correct copy of the Complaint is attached hereto as Exhibit "1."

2.      The Complaint was served on Toro on or after December 4, 2019. Accordingly, this Notice of Removal is filed within 30 days of service on this defendant and is, in all respects, timely. Toro has not filed any pleadings or other appearance in the circuit court.

**B.     The Action is Removable Based Upon Diversity Jurisdiction**

**I.      There is Diversity of Citizenship**

3.      This action is removable because this Court would have original jurisdiction under 28 U.S.C. § 1332 and because no proper defendant is a citizen of Alabama.

4.     According to paragraphs 1 and 2 of the Complaint, plaintiffs are residents of the State of Alabama. *Complaint*, ¶¶ 1-2. In addition to the named defendants discussed below, the Complaint identifies certain fictitious defendants. However, for purposes of removal, the citizenship of such fictitious defendants "shall be disregarded." 28 U.S.C. § 1441(b)(1).

5.     Defendant Toro is properly identified in the Complaint as a "foreign corporation with its principal place of business in Bloomington, Minnesota." *Complaint*, ¶ 4. Accordingly, for purposes of diversity jurisdiction and removal, Toro is not a citizen of Alabama.

6.     Defendant Wilson Dismukes, Inc. (on information and belief, incorrectly referred to as "Wilson-Dismukes, Inc." in the Complaint and hereinafter referred to as "Wilson-Dismukes") is properly identified in the Complaint as "an Alabama corporation," which would ordinarily defeat diversity jurisdiction. *Complaint*, ¶ 11. However, Wilson-Dismukes is, in the jargon of removal jurisdiction, a "fraudulently joined" defendant because, under Alabama law, there is no basis for plaintiffs to recover against Wilson-Dismukes. Such is the case with respect to each and every count asserted against Wilson-Dismukes, as demonstrated below. Accordingly, this Court should disregard Wilson-Dismukes' citizenship for establishing diversity jurisdiction, as more fully explained below.

## II.     Wilson-Dismukes Was Fraudulently Joined

7.     "As the United States Supreme Court has long recognized, a defendant's 'right to removal cannot be defeated by a fraudulent joinder of a residential defendant having no real connection to the controversy.'" *Owens v. Life Ins. Co. of Georgia*, 289 F. Supp. 2d 1319, 1323 (M.D. Ala. 2003) (*quoting Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)). The Eleventh Circuit has articulated that fraudulent joinder may occur in three situations:

> The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant . . . . The second is when there is outright fraud in the plaintiff's pleading

2

> of jurisdictional facts . . . . [A third situation arises] where a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several or alternative liability and where the claims against the diverse defendant have no real connection to the claim against the non-diverse defendant.

*Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (internal citations omitted). In the first circumstance, if there is no possibility for establishing a claim against the non-diverse defendant, the non-diverse defendant is deemed fraudulently joined and the court may disregard the non-diverse defendant's citizenship. *Owens*, 289 F. Supp. 2d at 1323-24 (denying remand and finding no possibility that plaintiff could establish a cause of action against the non-diverse defendant and thus the non-diverse defendant was fraudulently joined). The possibility of legal liability "must be reasonable, not merely theoretical." *Legg v. Wyeth*, 428 F.3d 1317, 1325 n. 5 (11th Cir. 2005) (*quoting Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)).

8.     In *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998), the Court set out an often-cited guideline for measuring fraudulent joinder assertions: "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties. In making its determination, the District Court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor."

9.     The Complaint, in conjunction with the evidence submitted with this Notice of Removal, effectively negates any possibility that Wilson-Dismukes could be found liable under any of the counts asserted against it by either plaintiff. The Alabama Legislature has made it clear that, with certain exceptions not applicable here, persons or entities in the position of Wilson-Dismukes are immune from litigation ("no product liability action may be asserted . . ."). Thus,

3

the only possible conclusion is that Wilson-Dismukes has been fraudulently joined in Counts II

through VI of the Complaint. *See Legg*, 428 F.3d at 1321-23 (11th Cir. 2005).

10.     All of the claims asserted against Wilson-Dismukes in the Complaint derive from

allegations that plaintiff, Barry McCall ("B. McCall"), suffered injuries caused by the defective

and unreasonably dangerous condition of his 2013 Toro TimeCutter zero-radius turn ("ZRT")

mower, Model No. 74633, Serial No. 313011268 ("Subject Toro ZRT"), manufactured by Toro

and sold by Wilson-Dismukes, which McCall was purportedly using while mowing on April 20,

2019, and that plaintiff, Cheryl McCall ("C. McCall") lost the comfort and society ("Loss of

Consortium") of her husband, B. McCall, as a result thereof.[1] *Complaint*, ¶¶ 10, 12, 15, 69-70. The

following outlines plaintiffs' causes of actions:

| Cause of Action | Brought By | Brought Against |
|---|---|---|
| 1. AEMLD Design Defect and Manufacturing Defect | B. McCall | Toro |
| 2. AEMLD Failure to Warm | B. McCall | Toro and Wilson-Dismukes |
| 3. Negligence | B. McCall | Toro and Wilson-Dismukes |
| 4. Wantonness | B. McCall | Toro and Wilson-Dismukes |
| 5. Breach of Warranties | B. McCall | Toro and Wilson-Dismukes |
| 6. Loss of Consortium | C. McCall | Toro and Wilson-Dismukes |

11.     The Complaint contains six counts, but only Counts II through VI are asserted

against Wilson-Dismukes. Each of the claims against Wilson-Dismukes falls within one of the

---

[1] C. McCall states only one claim for loss of consortium against defendants. *See Complaint* at p. 19. A loss of consortium claim is derivative of the injured plaintiff's (here, B. McCall's) claims and cannot survive independently of those claims. *See Bloodsworth v. Smith & Nephew*, No. Civ.A. 2:05CV622-D, 2005 WL 3470337, at *5 (M.D. Ala. Dec. 19, 2005).

categories described in Ala. Code. § 6-5-521 as a "product liability action." As explained below, each cause of action against Wilson-Dismukes is barred by Alabama law. Accordingly, neither plaintiff can state a claim against it, and the claims asserted in Counts II through VI against Wilson-Dismukes fail as a matter of law.

12.     Under the recently amended Alabama Product Liability statute,[2] sellers/dealers are immune from product liability lawsuits:

> No product liability action may be asserted or may be provided a claim for relief against any distributor, wholesaler, dealer, retailer, or seller of a product, or against an individual or business entity using a product in the production or delivery of its products or services (collectively referred to as the distributor) unless any of the following apply:
>
>> 1.      The distributor is also the manufacturer and such act is causally related to the product's defective condition.
>>
>> 2.      The distributor exercised substantial control over the design, testing, manufacture, packaging, or labeling of the product and such act is causally related to the product's condition.
>>
>> 3.      The distributor altered or modified the product, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought.
>>
>> 4.      It is the intent of this subsection to protect distributors who are merely conduits of a product. This subsection is not intended to protect distributors from independent acts unrelated to the product design or manufacture, such as independent acts of negligence, wantonness, warranty violations, or fraud.

Ala. Code §§ 6-5-501(2)(a); 6-5-521(2)(a) (2011) (emphasis added) (the "Seller's Exception").

The Seller's Exception precludes actions against a dealer such as Wilson-Dismukes. To avoid any doubt, the Legislature expressly stated its intent to protect sellers from product liability actions. *Id.*

---

[2] The amendment is effective as to product liability claims filed on or after June 9, 2011. Ala. Code §§ 6-5-501(2)(a); 6-5-521(2)(a) (2011).

13.     Immunity under the Seller's Exception extends to product liability actions, defined as:

> Any action brought by a natural person for personal injury, death, or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, or labeling of a manufactured product when such action is based on (a) negligence, (b) innocent or negligence misrepresentation, (c) the manufacturer's liability doctrine, (d) the Alabama extended manufacturer's liability doctrine, as it exists or is hereafter construed or modified, (e) breach of any implied warranty, or (f) breach of any oral express warranty and no other. A product liability action does not include an action for contribution or indemnity.

Ala. Code § 6-5-501(2) (defining "product liability action"); *see also* Ala. Code § 6-5-521(2) (same). The statute includes indemnity from the AEMLD, negligence, breach of warranty and misrepresentation. *Id.* The Seller's Exception, however, does not protect sellers from liability resulting from the seller's independent acts unrelated to the product design and manufacture.[3]

14.     Under the Seller's Exception, product liability claims may not be asserted against a seller who merely acts as a conduit for the sale of a product. *Id.*

15.     The Complaint does not allege that B. McCall purchased the Subject Toro ZRT from Wilson-Dismukes. In fact, the Declaration of W. Edward Dismukes, Jr., attached hereto as Exhibit "2" and incorporated herein by reference, establishes that the mower was not sold to either plaintiff, but to one Pearly Williams nearly six years prior to B. McCall's accident, and that Wilson-Dismukes does not know how the mower ended up in his hands. *Declaration*, ¶ 4

16.     In his Declaration, W. Edward Dismukes, Jr., sole shareholder and president of Wilson-Dismukes ("Mr. Dismukes"), not only affirms that the Subject Toro ZRT was not sold to

---

[3] This exception is inapplicable here because only the proscribed claims are brought against Wilson-Dismukes. *See supra* at ¶ 10.

either plaintiff by Wilson-Dismukes, but he expressly addresses each of the potential exceptions to Ala. Code § 6-5-521 immunity, and disclaims each circumstance under which Wilson-Dismukes might otherwise fit into one of those exceptions. The chart below provides an overview of the exceptions and Mr. Dismukes' sworn testimony supporting that Wilson-Dismukes is immune under the Seller's Exception:

| Exceptions to the Seller's Exception | Evidence that the exception to the Seller's Exception does not apply |
|---|---|
| 1. Seller is also the manufacturer | "Wilson Dismukes is an authorized Toro distributor." Declaration, ¶ 5.<br><br>"Wilson Dismukes was a mere conduit of the mower." *Id.* |
| 2. Seller exercised substantial control over the design, testing, manufacturing, packaging, or labeling | "Wilson Dismukes did not design, manufacture, assemble, or test the mower…" Declaration, ¶ 5.<br><br>"Wilson Dismukes did not design, create, or modify the packaging, instructions, and warnings." *Id.*<br><br>"Wilson Dismukes' website lists the mowers that it sells and includes information on the mowers provided by the manufacturers for the product but Wilson Dismukes did not prepare or disseminate material on the subject mower that it generated." *Id.* |
| 3. Seller altered or modified the product **and** the alteration or modification was a substantial factor in causing the alleged harm. | "Likewise, Wilson Dismukes did not alter or modify the mower in any way." Declaration, ¶ 5. |

Mr. Dismukes' Declaration establishes that the Subject Toro ZRT came to Wilson-Dismukes prepackaged, and that Wilson-Dismukes had nothing whatsoever to do with the design, manufacture, assembly, or testing of the mower. Furthermore, Wilson-Dismukes, as provided by the manufacturer, did not alter, create, or modify the mower's packaging, instructions, or warnings. Further, while Wilson-Dismukes' website lists the various mowers that it sells and their manufacturers, Wilson-Dismukes did not prepare or disseminate any marketing material on the Subject Toro ZRT. Wilson-Dismukes was a "mere conduit of the mower." *See* Declaration, ¶ 5.

7

Finally, speaking to Wilson-Dismukes' sale of, or dealings in relation to, the Subject Toro ZRT,

Mr. Dismukes' Declaration affirms that Wilson-Dismukes had no such dealings after the sale,

except to provide a battery for the mower, under warranty, less than two months later. It performed

no other service, repair or work, and made no modifications to the mower thereafter. *Id.* at ¶ 6. As

the foregoing clearly determines, Wilson-Dismukes is subject to the Seller's Exception, and no

exception thereto applies in the case. *See* Ala. Code § 6-5-521(b).

17.     Moreover, Mr. Dismukes' Declaration establishes the following facts, which are

most pertinent to the issue of "fraudulent joinder" as it relates to Wilson-Dismukes:

> 7.      The subject mower is a non-commercial residential grade
> zero turn mower. Wilson Dismukes does not sell and is not aware of
> any residential grade zero turn mowers equipped with a rollover
> protection system. Wilson Dismukes is not aware of any kits or
> options to add a rollover protection system to the subject mower or
> any other residential grade zero turn mowers.
>
> 8.      Wilson Dismukes also sells commercial grade zero turn
> mowers. These mowers are larger and heavier than residential grade
> zero turn mowers. Some of the commercial grade zero turn mowers
> have a rollover protection system or the option to add a rollover
> protection system. The company's assumption has been that the
> rollover protection systems are available for commercial mowers
> due to the size and weight of the commercial mowers.
>
> 9.      Wilson Dismukes does not have specialized knowledge
> concerning the existence of rollover protection systems for zero turn
> mowers that plaintiffs lacked. Mr. McCall purchased a Fastcat Pro
> commercial zero turn mower manufactured by Bob-Cat from
> Wilson Dismukes on March 6, 2012. The mower had the option for
> a rollover protection system. Mr. McCall was advised of the
> existence of the option and declined to purchase it. There were other
> commercial zero turn mowers with rollover protection system on
> display in our store when Mr. McCall purchased the Fastcat mower.
>
> 10.     Prior the complaint in this case, Wilson Dismukes was not
> aware of any actual or alleged accidents or resulting injuries from
> the rollover of any zero turn mower without rollover protection
> system which it sold. Wilson Dismukes did not know at the time it
> sold the mower and still does not believe today that zero turn
> mowers lacking a rollover protection system are unreasonably

> dangerous, a safety hazard, or defective. My own family and I have
> operated zero turn mowers, including the same subject mower
> model, without a rollover protection system. The manuals for the
> subject Toro mower and the Fastcat mower purchased by Mr.
> McCall, provided with the mowers when sold and publicly available
> on the internet, include instructions and warnings about operating
> zero turn mowers on slopes and around sudden drop offs. Excerpts
> from these manuals are attached hereto as exhibit B. There is no risk
> of rollover or related injury if these instructions are heeded.

*Declaration*, ¶¶ 7-10.

18.     Based on the foregoing, no product liability action may be asserted, and no other

basis for relief has been claimed, against Wilson-Dismukes. Therefore, looking to the undisputed

facts, there is no reasonable possibility of establishing any claim of either McCall against Wilson-

Dismukes and Wilson-Dismukes should be found to have been fraudulently joined as a defendant.

*Legg*, 428 F.2d at 1322-25; *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561-62 (11th Cir.

1989); *Raye v. Employer's Ins. of Wasau*, 345 F. Supp. 2d 1313, 1318-19 (S.D. Ala. 2004); *see

also Bloodsworth*, 2005 WL 3470337 at *5 ("Accordingly . . . the court finds that there is no

possibility that Mrs. Bloodsworth can prove any of her causes of action against Spar Medical.

Consequently, Mr. Bloodsworth's loss of consortium claim against Spar Medical also has no

possibility of surviving because his claim is derivative of Mrs. Bloodsworth's causes of action.").

As a result, Wilson-Dismukes' citizenship must be disregarded for purposes of diversity

jurisdiction.  Toro is the only properly named defendant and no defendant is a citizen of the State

in which the action is brought. *See* 28 U.S.C. §§ 1332, 1441(b)(2).  Because Toro is a citizen of

Minnesota and plaintiffs are citizens of Alabama, diversity is complete.

### III.    The Amount in Controversy Exceeds $75,000

19.     Although plaintiffs do not specify the amount in controversy in their Complaint,

the amount in controversy more likely than not exceeds $75,000, exclusive of interest and costs.

*See, e.g., Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (when the complaint

contains an unspecified demand for damages, a removing defendant need only prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement); *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356-57 (11th Cir. 1996); *Moss v. Voyager Ins. Cos.,* 43 F.Supp. 2d 1298, 1301 (M.D. Ala. 1999). *See also Justice v. Jeff Lindsay Communities, Inc.*, No. 3:10-CV-88-WKW, 2011 WL 744773 at *1 (M.D. Ala. Feb. 25, 2001); *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2011) (where a plaintiff "has not pled a specific amount for damages [in state court], the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount.").

20.     Here, it is facially apparent from the Complaint that the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiffs allege that B. McCall was "catastrophically injured," "crushed," and suffered a "burst fracture to his T-12 vertebrae, with extension of the fragments into his spinal canal, an L-1 fracture, and paralysis in his lower extremities" and "permanent injuries" as a result of the subject accident. *Complaint* ¶¶ 9, 12, 47, 51, 56, 61, 67. Plaintiffs demand compensatory and punitive damages against each of the defendants jointly and severally in an amount to be determined by a jury.

21.     Juries in Alabama routinely award more than $75,000 in cases establishing claims for personal injury seeking compensatory and punitive damages,[4] including claims for mental

---

[4] *See, e.g.*, *Shiv-Ram, Inc. v. McCaleb*, 892 So. 2d 299, 304 (Ala. 2003) (punitive damage award of $500,000 in personal injury case); *Sears, Roebuck & Co. v. Harris*, 630 So. 2d 1018, 1024 (Ala. 1993) (punitive damage award of $2.5 million to four plaintiffs in products liability case); *Wal-Mart Stores, Inc. v. Thompson*, 726 So. 2d 651 (Ala. 1998) ($175,000 punitive damages jury verdict in personal injury case).

anguish[5] and breach of implied warranty.[6]  In addition, there are other clear indicia in the record that the jurisdictional amount is present here. For instance, in Alabama practice a circuit court plaintiff has a filing fee choice "break line" when deciding whether to seek more, or less, than $50,000 in damages. *See* Ala. Code § 12-19-71(a). In this case, plaintiffs had a choice of whether or not to file pursuant to the lower-cost, "less-than-$50,000" option. They elected, instead, the higher-cost "50,000 or more" option. A district court should apply its judicial experience and common sense when determining whether a claim brought seeking compensatory and punitive damages under Alabama law, and alleging the types of injuries catalogued here, exceeds the amount in controversy threshold of 28 U.S.C. § 1332.  *Id.*

22.    When analyzed with judicial experience and common sense, and in light of the allegations above made part of plaintiffs' claims for compensatory and punitive damages, the value of plaintiffs' claims more likely than not exceeds the $75,000 jurisdictional requirement, exclusive of interest and costs.[7]

---

[5] *See, e.g.*, *Wal-Mart Stores v. Thompson*, 726 So. 2d 651, 652 (Ala. 1998) (jury award for $100,000 for personal injury and mental anguish); *Crown Life Ins. Co. v. Smith*, 657 So. 2d 821, 825 (Ala. 1994) (jury award of $2 million for mental anguish against insurance company, remitted to $250,000); *Northwestern Mut. Life Ins. Co. v. Sheridan*, 630 So. 2d 384, 387 (Ala. 1993) (jury award of $800,000 in damages for mental anguish against out-of-state company).

[6] *See, e.g.*, *Lincoln Log Home Enters., Inc. v. Autrey*, 836 So. 2d 804, 805 (Ala. 2002) (jury award of $500,000 on breach of implied warranty claim for log home defects; reversed on other grounds); *S. Energy Homes, Inc. v. Washington*, 774 So. 2d 505, 510 (Ala. 2000) (jury award of $375,000 on implied warranty claim based in part on mental anguish).

[7] C. McCall's loss of consortium claim against Wilson-Dismukes fails, as explained above. *See Bloodsworth*, 2005 WL 3470337 at *5. Her claim survives, at least at this stage of the proceedings, against Toro. C. McCall "is a pendent party with a loss-of-consortium claim" and is, therefore, subject to this Court's jurisdiction pursuant to 28 U.S.C. § 1367. *Monroe v. Brown*, 256 F. Supp. 2d 1292, 1294 (M.D. Ala. 2003) (exercising jurisdiction over a loss of consortium claim and denying plaintiffs' motion to remand). As a pendent party, C. McCall does not have to establish a separate amount in controversy apart from B. McCall's claims. *See id.* at 1296 (finding that "Mr. Monroe's loss-of-consortium claim need not meet § 1332's amount-in-controversy requirement").

## C.    Attachment of State Court Pleadings and Records

23.    Under Local Rules 3.1 and 81.1 and 28 U.S.C. § 1446, a completed civil cover sheet and clear and legible copies of all pleadings, records and proceedings from the state court action are attached as Exhibit "3."

## D.    Consent to Removal

24.    A removing defendant is not required to obtain the consent of fraudulently joined defendants. *See Russell v. Transamerica Occidental Life Ins. Co.*, No. 2:05cv972-ID, 2006 WL 2547431 at *1 n. 1 (M.D. Ala. Aug. 31, 2006); *Clay v. Brown & Williamson Tobacco Corp*., 77 F. Supp. 2d 1220, 1222 n. 3 (M.D.  Ala.1999); *Balazik v. County of Dauphin*, 44 F.3d 209, 213 n. 4 (3d Cir. 1995). Consent likewise is unnecessary from fictitiously named defendants.  28 U.S.C. § 1441(a); *Balazik*, 44 F.3d at 213 n. 4.; *Davis ex rel. Estate of Davis v. Gen. Motors Corp.*, 353 F. Supp. 2d 1203, 1206 n. 3 (M.D. Ala. 2005). Notwithstanding that consent is not required from fraudulently joined defendant Wilson-Dismukes, Wilson-Dismukes has consented to removal of the state court action to federal court. *Declaration*, ¶ 11.

## E.    Service and Filing of Notice of Removal

25.    Under  28  U.S.C. § 1446(d),  a  copy  of  this  Notice  of  Removal  is  being contemporaneously served on plaintiffs and promptly filed with the Clerk of the Circuit Court of Mobile County, Alabama.  *See* Notice of Filing of Notice of Removal attached as Exhibit "4."

26.    No admission of fact, law, or liability is intended by this Notice of Removal, and all defenses, motions, and pleas are expressly reserved.

## F.    Conclusion

27.    For the foregoing reasons:

(a)    Wilson-Dismukes was fraudulently joined, and its citizenship should be disregarded;

(b)     Plaintiffs, citizens of Alabama, are diverse in citizenship from all defendants from which a judgment might be obtained in this action;

(c)     the amount in controversy exceeds $75,000, exclusive of interest and costs; and

(d)     this Notice of Removal is timely filed within the time prescribed by 28 U.S.C. §1446(b);

Toro is entitled to have this cause removed from the Circuit Court of Mobile County, Alabama, to the United States District Court for the Southern District of Alabama, Southern Division, which District and Division embrace the place where the action is pending.

Respectfully submitted this the 3rd day of January, 2020.

*s/ William P. Cobb, II*
_____
One of the Attorneys for Defendant
The Toro Company

**OF COUNSEL:**

William P. Cobb, II (ASB-9810-O67W)
Email: pcobb@balch.com
Aria B. Allan (ASB-2064-E10Q)
Email: aallan@balch.com
BALCH & BINGHAM LLP
Post Office Box 78 (36101)
105 Tallapoosa Street, Suite 200
Montgomery, AL 36104
Telephone:     (334) 834-6500
Facsimile:     (334) 269-3115

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and service will be perfected upon the following CM/ECF participant(s) electronically on this the 3rd day of January, 2020:

Desmond V. Tobias                          Wilson-Dismukes, Inc.
Jason S. McCormick                         2646 Government Boulevard
Bryan E. Comer                             Mobile, Alabama 36606
TOBIAS, MCCORMICK & COMER, LLC
1203 Dauphin Street
Mobile, Alabama 36604


*s/ William P. Cobb, II* _____
Of Counsel

8124475.6

14