# EXHIBIT "1"

DOCUMENT 2

ELECTRONICALLY FILED
11/26/2019 5:15 PM
02-CV-2019-903150.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

## IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

| | |
|---|---|
| BARRY MCCALL, an individual; CHERYL MCCALL, an individual; §<br>§<br>§ | |
| **Plaintiff,** §<br>§<br>§ | |
| **v.** § | **CIVIL ACTION NO.:** |
| § | |
| THE TORO COMPANY; WILSON-DISMUKES, INC.; 1-10, whether singular or plural, individuals, partnerships, corporations, companies, or other legal entities that designed, manufactured, marketed, sold, distributed, retailed, supplied or otherwise placed in the stream of commerce that certain Toro mower in its defective and/or unreasonably dangerous condition hereinafter described in this Complaint; 11-20, whether singular or plural, the individuals, partnerships, corporations, companies, or other legal entities that designed, manufactured, marketed, sold, distributed, retailed, supplied or otherwise placed in the stream of commerce that certain Toro mower (and/or its component parts) hereinafter described in this Complaint and thereby impliedly warranted that it was merchantable and/or fit for the purposes for which it was designed; 21-30, whether singular or plural, the individuals, partnerships, corporations, companies, or other legal entities that negligently and/or wantonly designed, manufactured, assembled, inspected, tested, packaged, labeled, failed to provide adequate warnings for, sold, installed, repaired and/or maintained that certain Toro mower (and/or its component parts) hereinafter described in this Complaint; 31-40, whether singular or plural, the individuals, partnerships, corporations, companies, or other legal entities that suppressed, concealed, failed to disclose, and/or to warn Plaintiff that the Toro mower hereinafter described in this Complaint was defective and/or unreasonably dangerous due to the failure of Defendants to incorporate a ROPS; 41-50, whether singular or plural, the person, firm, corporation or other entity, whose negligence, wantonness, or other tortious conduct caused Barry McCall to be catastrophically injured, all of whose true legal names and identities are unknown at this time but will be substituted by amendment when ascertained, §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CV-2019-_____** |
| **Defendants.** §<br>§<br>§ | |

DOCUMENT 2

## COMPLAINT

Plaintiffs Barry McCall and Cheryl McCall file this Complaint against Defendants, The Toro Company, Wilson-Dismukes, Inc., and fictitious defendants 1-50, stating as follows:

### I.   PARTIES

1.   Plaintiff Barry McCall is an adult resident citizen of Mobile County, Alabama and was so at all times complained of herein.

2.   Plaintiff Cheryl McCall is an adult resident citizen of Mobile County, Alabama and was so at all times complained of herein.

3.   Defendant Wilson-Dismukes, Inc., is an Alabama corporation organized and existing under the laws of the State of Alabama with its principal place of business in Mobile County, Alabama.   Wilson-Dismukes, Inc., regularly conducts business in Mobile County, Alabama, has an authorized Toro dealership physically in Mobile County, Alabama, to sell their products, and sold the Subject Toro ZRT mower and placed it into the stream of commerce in Mobile County, Alabama.   Upon information and belief, Wilson-Dismukes, Inc., is an authorized dealership for The Toro Company for the sale of products, including, specifically, the Subject Toro mower.   Upon information and belief, Wilson-Dismukes, Inc., contracted with The Toro Company to sell Toro products in Mobile County, Alabama, including the Subject Toro mower.   Upon information and belief, Wilson-Dismukes, Inc., holds itself out to the public in Mobile County, Alabama, and is, in fact, doing business in Mobile County, Alabama, as an authorized dealership for The Toro Company and is in the business of buying, marketing, selling, and repairing Toro products, including the Subject Toro ZRT mower, and wantonly marketed,

DOCUMENT 2

sold, and otherwise placed into the stream of commerce the Subject Tower mower in a dangerous condition.

4.      Defendant The Toro Company is a foreign corporation with its principal place of business in Bloomington, Minnesota.  The Toro Company is in the designing, manufacturing, marketing, selling, and/or otherwise placing into the stream of commerce in Mobile County, Alabama, numerous products, including specifically the Subject Toro mower.  The Toro Company is regularly engaged in business in Mobile County, Alabama, and markets, sells, and/or otherwise places its products, including the Subject Toro mower, into the stream of commerce in Mobile County, Alabama, through its Toro authorized dealer, Wilson-Dismukes, Inc.

5.      Fictitious Defendants 1-10 are individuals, partnerships, corporations, companies, or other legal entities that designed, manufactured, marketed, sold, distributed, retailed, supplied or otherwise placed in the stream of commerce the Subject Toro ZRT mower in its defective and/or unreasonably dangerous condition.  Plaintiffs state that the identities of these fictitious party defendants are otherwise unknown to Plaintiffs at this time or, if the true names are known to Plaintiff, their identities as proper party defendants are not known to Plaintiffs at this time, and their true names will be substituted by amendment when ascertained.

6.      Fictitious Defendants 11-20 are individuals, partnerships, corporations, companies, or other legal entities that designed, manufactured, marketed, sold, distributed, retailed, supplied or otherwise placed in the stream of commerce the Subject Toro ZRT mower (and/or its component parts) and thereby impliedly warranted that it was merchantable and/or fit for the purposes for which it was designed.  Plaintiffs state that the identities of these fictitious party defendants are otherwise unknown to Plaintiffs at this time or, if the true names are known

3

DOCUMENT 2

to Plaintiffs, their identities as proper party defendants are not known to Plaintiffs at this time, and their true names will be substituted by amendment when ascertained.

7.      Fictitious Defendants 21-30 are individuals, partnerships, corporations, companies, or other legal entities that negligently and/or wantonly designed, manufactured, assembled, inspected, tested, packaged, labeled, failed to provide adequate warnings for, sold, installed, repaired and/or maintained the Subject Toro ZRT mower (and/or its component parts). Plaintiffs state that the identities of these fictitious party defendants are otherwise unknown to Plaintiffs at this time or, if the true names are known to Plaintiffs, their identities as proper party defendants are not known to Plaintiffs at this time, and their true names will be substituted by amendment when ascertained.

8.      Fictitious Defendants 31-40 are individuals, partnerships, corporations, companies, or other legal entities that suppressed, concealed, failed to disclose, and/or to warn Plaintiffs that the Toro mower hereinafter described in this Complaint was defective and/or unreasonably dangerous due to the failure of Defendants to incorporate a  rollover protection system ("ROPS").  Plaintiffs state that the identities of these fictitious party defendants are otherwise unknown to Plaintiffs at this time or, if the true names are known to Plaintiffs, their identities as proper party defendants are not known to Plaintiffs at this time, and their true names will be substituted by amendment when ascertained.

9.      Fictitious Defendants 41-50 are the persons, firms, corporations or other entities, whose negligence, wantonness, or other tortious conduct caused Barry McCall to be catastrophically injured.  Plaintiffs state that the identities of these fictitious party defendants are otherwise unknown to Plaintiffs at this time or, if the true names are known to Plaintiff, their

identities as proper party defendants are not known to Plaintiffs at this time, and their true names will be substituted by amendment when ascertained.

## II.    JURISDICTION

10.    The Court has personal jurisdiction over The Toro Company because, at all times mentioned herein, it designed, manufactured, distributed, marketed, sold, and it still sells, distributes and markets its manufactured products, including Toro mowers and related products, in Mobile County, Alabama, and in the State of Alabama.  In addition, the Subject Toro ZRT mower was sold in Mobile County, Alabama, by the Toro Company's authorized dealer in Mobile County, Alabama, and the Subject incident occurred in Mobile County, Alabama.  The Toro Company directly engages in business and directly sells products in Alabama via authorized dealers, including Defendant Wilson-Dismukes, Inc.

11.    The Court has personal jurisdiction over Wilson-Dismukes, Inc. because it is an Alabama Corporation with its principal place of business in Mobile County, Alabama, and at all times mentioned herein it operated its business and performs services in the State of Alabama, and in Mobile County, Alabama.

## III.    FACTUAL ALLEGATIONS

12.    On April 20, 2019, Barry McCall was rendered a paraplegic when his 2013 Toro TimeCutter zero-radius turn ("ZRT") mower, Model No. 74633, Serial No. 313011268 ("Subject Toro ZRT") rolled over and crushed him while he was mowing in Mobile County, Alabama. Plaintiff's injuries include a burst fracture to his T-12 vertebrae, with extension of the fragments into his spinal canal, an L-1 fracture, and paralysis in his lower extremities.

DOCUMENT 2

13.     Defendant, The Toro Company ("Toro"), designed, manufactured, and distributed the defective product at issue in this case: the Subject Toro ZRT.   In 2018, the year before Barry McCall was paralyzed, Toro delivered record net sales of $2.619 billion dollars, record net earnings of $271.9 million dollars, and record operating earnings of $373.1 million dollars. The Toro Company sells zero-radius turn mowers through its Toro and eXmark brands.[1]

14.     Defendant, Wilson-Dismukes, Inc., Toro's authorized dealer in Mobile County, Alabama, sold the Subject Toro ZRT and/or otherwise placed it into the stream of commerce in Mobile County, Alabama.

15.     The Subject Toro ZRT was in a defective and unreasonably dangerous condition at the time of its design, manufacture, distribution, and sale due to the absence of a rollover protection system ("ROPS").   Toro knew the Subject Toro ZRT was in a defective and unreasonably dangerous condition due to the failure to incorporate ROPS into its design but chose to sell it anyway while at the same time incorporating ROPS into Toro's more expensive ZRT mowers sold under its Toro and eXmark brand names. For many years Toro knew the dangers posed by operating ZRT mowers without ROPS.

16.     In 2003, a Trade Journal published an article entitled "Toro Adds Rollover Protection to Riding Mowers." The Article specifically quotes Toro's Director of Marketing as follows:

> "Toro is adding standard Rollover Protection Systems to its line of Z Master commercial zero-turn radius mowers. … Since we already provide standard ROPS on several commercial mowers, it makes perfect sense to do the same with the Toro Z Masters," recalled Brand Hamilton, director of marketing for Toro's landscape contractor business. Although this feature will not be seen until the latest models are released in a few months, the addition has been a top Toro priority for months. 'We actually began our commercial Z mower safety campaign last November at GIE,' Hamilton recalled. 'The addition of ROPS is a

---

[1] The Toro Company 2018 Annual Report, Ex. 1.

DOCUMENT 2

continuation of that initiative, and physically goes into production on our Toro Z mowers with model year 2004 production, which begins this summer.' ... 'Safety is important to everyone in the industry, including equipment operators, landscape company owners, equipment dealers and manufacturers,' Hamilton noted. **'And since ROPS is already available as optional equipment from most manufacturers, we believe more manufacturers will put ROPS on standard in the near future.'"**[2]

In 2004, Toro published an article entitled "Toro Count On It:  Free ROPS Retrofit Kit Available for Z-Master Mowers Manufactured before 2004."  The Toro article specifically acknowledges including ROPS on ZRT mowers prevents serious injuries and deaths:

> Operating a zero-turn radius riding mower, particularly around ponds, sudden drop-offs, and steep slopes, requires extra diligence to avoid accidents or rollovers.  As a leading manufacturer of commercial riding mowers, The Toro Company is committed to your safety and wants to make certain you are aware of the potential for serious injury or death when these riders are not operated properly around such hazards.  **Rollover Protection Systems (ROPS), in combination with seat belts, are shown to be effective in preventing serious injuries or death if equipment overturns.**  ROPS are standard equipment on Toro Z Master Mid-Mount ZRT commercial mowers manufactured in 2004 or later.  Owners of Z Masters manufactured before 2004 ... can obtain a free ROPS....[3]

Toro also published an article titled "Zero-Turn Riding Mower Safety Tips Provided by The Toro Company," wherein Toro specifically acknowledged ROPS can prevent a ZRT mower operator from being pinned under the mower:

> "... To promote safe operation, a rollover protection system (ROPS), now comes standard on all new professional zero-turn models.  **ROPS, in the fully raised position, can prevent an operator from being pinned under their machine.**  Without ROPS, the operator compartment or safety zone-and more importantly, the operator- remains unprotected from the weight of the machine, which can exceed 1,700 pounds on some models.  **In combination with seat belts, ROPS are shown to be highly effective in preventing serious injuries or death if the equipment overturns....**"[4]

---

[2] Toro Adds Rollover Protection to Riding Mowers, Ex. 2 (emphasis added).
[3] Toro Count On It, Free ROPS Retrofit Kit Available for Z-Master Mowers, Ex. 3 (emphasis added).
[4] Zero-Turn Riding Mower Safety Tips Provided by The Toro Company, Ex. 4 (emphasis added).

In 2009, Toro published an article titled "Safety Alert for Buyers of Used Commercial

Zero Turn Mowers. Look Up To Make Sure There's a Rollover Bar Above Your Head." In the

article, Toro again acknowledged the danger of operating ZRT mowers without ROPS:

> "The Toro Company is encouraging buyers of previously owned commercial
> zero-radius turn (ZRT) mowers to check that each unit is properly equipped with
> an overhead rollover protection system (ROPS). **Similar to a roll bar on a race
> car, an overhead ROPS and the use of any accompanying seatbelt can
> prevent an operator from being thrown from a machine or pinned under the
> mower should it overturn.** ... While ROPS are now standard equipment on all
> Toro and many other brands of commercial mowers, some older models are
> resold without the device. That's where manufacturer retrofit programs come in.
> For example, through their dealers, both Toro and Exmark offer free ROPS
> installation on commercial Z mowers missing the manufacturer-installed
> ROPS....."[5]

Toro also produced a ROPS safety video entitled "eXmark Zero-Turn Riding Mower Operator

Safety Training Video, part 2 of 7." In the ROPS safety video, Toro acknowledges ROPS "will

reduce the chance of injury or death in the event of an unexpected rollover :

> "This operator safety video provides an overview of the safety features and
> operating characteristics of eXmark zero turn mowers with rollover protection
> systems.  eXmark zero turn mowers are equipped with heavy duty rollover
> protection systems, or ROPS, designed to protect operators in case of an
> unexpected rollover.  **Keep the ROPS in the raised, upright, locked position
> when mowing and wear the seatbelt at all times that the ROPS is up. Lower
> the ROPS only when absolutely necessary**, such as mowing under low
> clearances. Do not wear the seatbelt with the ROPS lowered and mow with
> additional caution. **Always use the ROPS and seatbelt in areas where there
> are slopes, drop-offs or water**. Return the ROPS to the upright, locked position
> and fasten the seatbelt as soon as clearance allows. **If the ROPS is lowered,
> there is no rollover protection and you could be pinned or crushed causing
> serious injuries or death.  Proper use of the ROPS will reduce the chance of
> injury or death in the event of an unexpected rollover.** Always operate the
> zero turn mower within the safety zone. Knowing the safety zone helps you stay
> clear of water and other hazards.  Stay clear of dangers by maintaining a safe
> distance of at least two mower widths from drop-offs, steep banks, retaining
> walls, drainage ditches and water. Use a walk mower or hand trimmer for these

---

[5] Safety Alert for Buyers of Used Commercial Zero Turn Mowers, Ex. 5 (emphasis added).

areas. With proper use and care, your eXmark zero turn mower will provide years of safe, dependable service."[6]

17.     In 2017, Toro provided a "Roll-Over Protection System Kit" for its more expensive "TimeCutter HD" model. Toro provided the following warnings on its TimeCutter HD model:

> "**WARNING:  To avoid injury or death from rollover:  Keep the roll bar in the fully raised, locked position and use the seat belt.  Ensure that the seat is secured to the machine.**
> **WARNING:  There is no rollover protection when the roll bar is in the down position.  Lower the roll bar only when absolutely necessary...."[7]**

18.     Defendant The Toro Company made a deliberate corporate financial decision to design, manufacture, and distribute Toro ZRTs to consumers across the United States knowing that the use of Toro ZRTs, without ROPS protection, was dangerous and more likely to result in serious injury or death in the event of a rollover.

19.     Defendant The Toro Company made a deliberate corporate financial decision to design, manufacture, and distribute Toro ZRTs to consumer across the United States in order to increase the profits of The Toro Company by not including an essential safety feature, a ROPS.

20.     Defendant The Toro Company made a deliberate financial calculation that it could save money and increase corporate profits by not including a ROPS on the Toro ZRT and that it was financially advantageous to do so, rather than include safety features that would save lives and prevent catastrophic injuries such as that suffered by Barry McCall.

21.     Defendant, The Toro Company, made a deliberate financial calculation not to warn consumers and users of its cheaper TimeCutter models lacking ROPS of the dangers posed by operating ZRT mowers without ROPS.

---

[6] eXmark Zero-Turn Riding Mower Operator Safety Training Video, part 2 of 7, Ex. 6 (emphasis added).
[7] Toro Rollover Protection System Kit TimeCutter HD, Ex. 7 (emphasis added).

DOCUMENT 2

22.     Defendant, Wilson-Dismukes, Inc., has been a licensed, authorized dealer of Toro ZRT mowers in Mobile County, Alabama, for years.

23.     Defendant, Wilson-Dismukes, Inc. sold the Subject Toro ZRT in Mobile County, Alabama.

24.     Defendant, Wilson-Dismukes, Inc., knew the Subject Toro ZRT lacked ROPS when it sold the Subject Toro ZRT in Mobile County, Alabama.

25.     Defendant, Wilson-Dismukes, Inc., knew there were no warnings on the Subject Toro ZRT disclosing the dangers posed by operating the Subject ZRT without ROPS.

26.     Defendant, Wilson-Dismukes, Inc., is a licensed authorized dealer of Toro products, including, specifically, Toro ZRT mowers and Toro eXmark brand ZRT mowers. Wilson-Dismukes, Inc., possesses specialized knowledge regarding Toro mowers and specifically Toro ZRT mowers and is an authorized service center for Toro ZRT mowers in Mobile County, Alabama.  Wilson-Dismukes, Inc., regularly sells more expensive Toro ZRT mowers with ROPS.  Wilson-Dismukes, Inc., regularly sells more expensive eXmark mowers with ROPS.  Wilson-Dismukes, Inc., regularly sells Toro OEM parts and, specifically, sells Toro and eXmark ROPS kits, including the ROPS kit for the more expensive TimeCutter HD mower.[8]

27.     Defendant, Wilson-Dismukes, Inc., as a licensed authorized dealer of Toro products, including, specifically, Toro and eXmark ZRT mowers, knew that ZRT mowers lacking ROPS constituted an unreasonably dangerous safety hazard to consumers.

28.     Defendant, Wilson-Dismukes, Inc., negligently and wantonly made a deliberate decision to market and sell the Subject Toro ZRT with the knowledge that it had no ROPS and, thus, lacked an essential safety feature.

---

[8] Wilson-Dismukes website excerpts, Ex. 8.

29.     Defendant, Wilson-Dismukes, Inc., had knowledge that the Subject Toro ZRT, without a ROPS, was defective and posed a life-threatening danger to any consumer who suffered a rollover, and it wantonly sold the defective product anyway.

30.     Defendant, Wilson-Dismukes, Inc., negligently and wantonly failed to warn consumers and end users in Mobile County, Alabama, including Barry McCall, of the risks and serious dangers posted by the Toro ZRT due to the absence of ROPS.

31.     Defendant, Wilson-Dismukes, Inc., negligently and wantonly marketed and sold the Subject Toro ZRT mower with reckless disregard for the dangerous consequences of selling the Toro ZRT without ROPS.

32.     At all times relevant to this Complaint, the Subject Toro ZRT was defective and unreasonably dangerous.

33.     The Subject Toro ZRT should have never been designed, manufactured, distributed, marketed, or sold without a ROPS, an essential safety feature on this type of consumer lawnmower.

34.     Barry McCall would not have been paralyzed had The Toro Company included a ROPS on the Subject Toro ZRT.

35.     Barry McCall's paralysis would likely have been prevented had Wilson-Dismukes, Inc., fully warned consumers and end users like Barry McCall of the risks inherent in a Toro ZRT under normal operating conditions, provided an alternative safe mower, or fitted the Subject Toro ZRT with the essential safety device (ROPS).

36.     Prior to Barry McCall's paralysis and through the date of filing this Complaint, The Toro Company has had knowledge of numerous catastrophic injuries and deaths of many

DOCUMENT 2

others across the Country, and yet continues to design, market, manufacture, distribute, and sell defective and unreasonably dangerous ZRT mowers to consumers.

37.    As a proximate result of the tortious acts of Defendants described herein, Plaintiff Barry McCall suffered the following catastrophic injuries and damages: serious, permanent bodily injuries, including a burst fracture of his T-12 vertebrae with extension of the fracture into the spinal canal, an L-1 fracture, paralysis in his lower extremities, he is bedridden and has developed painful ulcers to his body which required surgery; he requires assistance with basic human needs, and he is required to use a colostomy bag and catheter; he has been caused to undergo medical treatment and incur costs for said treatment, and will be caused to incur additional medical treatment and costs in the future; he is permanently injured; he has suffered, still so suffers, and will suffer in the future physical pain, suffering, mental anguish and distress; his injuries have caused him to be deprived of much enjoyment of his life and will so deprive him in the future.

## IV.    CAUSES OF ACTION

### COUNT I
### (AEMLD – DESIGN DEFECT AND MANUFACTURING DEFECT)

38.    Plaintiffs reassert the allegations in paragraphs 1-37 and incorporate the same by reference herein.

39.    At all material times mentioned herein, Defendants The Toro Company and Fictitious Defendants 1-50 were engaged in the business of designing, manufacturing, marketing, selling, distributing, retailing, supplying, or otherwise placing in the stream of commerce in Mobile County, Alabama, mowers and other accessory items, including the Subject Toro ZRT mower.

40.     Defendants The Toro Company and Fictitious Defendants 1-50 designed, manufactured, marketed, sold, distributed, retailed, supplied or otherwise placed in the stream of commerce in Mobile County, Alabama, the Subject Toro ZRT mower at issue in this civil action.

41.     Plaintiff expressly alleges that, to the extent any Defendant is deemed or found to be a distributor of the Subject Toro ZRT, including, specifically, Wilson-Dismukes, Inc., such Defendant was not merely a conduit of the product but, rather, committed independent acts or omissions that either were causally related to the product's defective or unreasonably dangerous condition or were substantial factors in causing Plaintiff Barry McCall's injuries, including, but not limited to, improperly marketing, packaging, failing to include instructions and/or warnings, assembling, selling, testing, inspecting, installing, maintaining and/or repairing the product.

42.     The Subject Toro ZRT reached Barry McCall, the ultimate user or consumer of the product, without any substantial change in its condition from the time it was designed, manufactured, marketed, sold, distributed, retailed, supplied, or otherwise placed in the stream of commerce by Defendants.

43.     When it reached Barry McCall, the Subject Toro ZRT mower was in a defective condition and/or in a condition that was unreasonably dangerous for its intended and foreseeable uses because the mower lacked a ROPS system.  Having made the decision to sell the ZRT mower without a ROPS system, the Defendants should have warned and instructed all users of the dangers of operating the Subject Toro ZRT mower without ROPS in the event of an unexpected rollover.

44.     At all times material hereto, the Subject Toro ZRT mower and its component parts were in a defective and unreasonably dangerous condition because of the following acts and omissions:

a.   Failure to design the Subject Toro ZRT with ROPS to prevent catastrophic injury or death during foreseeable use;

b.   Failure to design a retrofit ROPS for the Subject Toro ZRT after the date of manufacture to prevent catastrophic injury or death during foreseeable use;

c.   Failure to warn of the unreasonably dangerous condition posed by operating the Subject Toro ZRT without ROPS in the event of an unexpected rollover;

45.   Safer alternative designs incorporating ROPS to prevent users from catastrophic injury and death in the event of unexpected rollover existed and were feasible at the time of the subject incident.

46.   While being put to a foreseeable and intended use by Barry McCall, the Subject Toro ZRT mower failed, causing catastrophic injuries to Barry McCall.

47.   As a proximate result of the Subject Toro ZRT Mower's defective and/or unreasonably dangerous condition, Barry McCall suffered catastrophic, permanent injuries as described above.

WHEREFORE, Plaintiff Barry McCall demands compensatory and punitive damages from Defendants The Toro Company and Fictitious Defendants 1-50 in an amount in excess of the minimum jurisdictional limits of this Court, plus interest and costs.

## COUNT II
### (AEMLD – FAILURE TO WARN)

48.   Plaintiffs reassert the allegations in paragraphs 1-37 and incorporate the same by reference herein.

49.     Defendants The Toro Company, Wilson-Dismukes, Inc., and Fictitious Defendants 1-50 knew, or reasonably should have known, that the Subject Toro ZRT Mower posed an unreasonably dangerous risk of catastrophic injury and/or death to users due to the failure to incorporate ROPS.

50.     Defendants The Toro Company, Wilson-Dismukes, Inc., and Fictitious Defendants 1-50 knew, or reasonably should have known, the failure to provide any instructions or warnings addressing the unreasonably dangerous condition created by operating the Subject Toro ZRT Mower without ROPS rendered the product unreasonably dangerous.

51.     As a proximate result of The Toro Company, Wilson-Dismukes, Inc., and 1-50's failure to warn, Barry McCall suffered catastrophic, permanent injuries as described above.

WHEREFORE, Plaintiff Barry McCall, demands compensatory and punitive damages from Defendants The Toro Company, Wilson-Dismukes, Inc., and Fictitious Defendants 1-50 in an amount in excess of the minimum jurisdictional limits of this Court, plus interest and costs.

## COUNT III
### (NEGLIGENCE)

52.     Plaintiffs reassert the allegations in paragraphs 1-37 and incorporate the same by reference herein.

53.     Defendants carelessly and/or negligently manufactured, designed, assembled, made, sold, and distributed the Subject Toro ZRT Mower without adequate safety devices (ROPS) and with inadequate instructions/warnings.

54.     Defendants knew or, in the exercise of reasonable care and due diligence should have known, that the Subject ZRT Mower, without a ROPS, was dangerous and defective under normal operating conditions because ROPS prevents injuries and save lives when rollovers

15

DOCUMENT 2

occur.  Having made the decision to sell the Subject Toro ZRT Mower and any ZTR mower without the ROPS system, the Defendants should have warned and instructed all users of the dangers of operating the Subject Toro ZRT mower without ROPS.

55.     Plaintiffs expressly allege that, to the extent Wilson-Dismukes, Inc. or any Defendant is deemed or found to be a distributor of the Subject Toro ZRT Mower, such Defendant was not merely a conduit of the product, but rather committed independent acts or omissions that either were causally related to the product's defective or unreasonably dangerous condition or were substantial factors in causing Barry McCall's catastrophic injuries, including, but not limited to, improperly marketing, packaging, failing to include instructions and/or warnings, assembling, selling, testing, inspecting, installing, maintaining and/or repairing the product.  More specifically, it is alleged Wilson-Dismukes, Inc. wantonly sold ZRT mowers without ROPS, including the Subject Toro ZRT mower, with full knowledge and conscious disregard of the dangers created by selling ZRT mowers to consumers without ROPS.

56.     As a proximate result of the Defendants' negligence, Mr. McCall suffered catastrophic, permanent injuries as described above.

WHEREFORE, Plaintiff Barry McCall demands compensatory and punitive damages from Defendants The Toro Company, Wilson-Dismukes, Inc., and Fictitious Defendants 1-50, in an amount in excess of the minimum jurisdictional limits of this Court, plus interest and costs.

## COUNT IV
### (WANTONNESS)

57.     Plaintiffs reassert the allegations in paragraphs 1-37 and incorporate the same by reference herein.

58.     Defendants recklessly and/or wantonly manufactured, designed, assembled, made, sold, and distributed the Subject Toro ZRT Mower without adequate safety devices (ROPS) and with inadequate instructions/warnings.

59.     Defendants knew, with conscious disregard of the danger, that the Subject ZRT Mower, without a ROPS, was dangerous and defective under normal operating conditions because ROPS prevents injuries and save lives when rollovers occur. Having made the decisions to sell the Subject Toro ZRT Mower and any ZTR mower without the ROPS system, the Defendants should have warned and instructed all users of the dangers of operating the Subject Toro ZRT mower without ROPS.

60.     Plaintiffs expressly allege that, to the extent Wilson-Dismukes, Inc. or any Defendant is deemed or found to be a distributor of the Subject Toro ZRT Mower, such Defendant was not merely a conduit of the product, but rather committed independent acts or omissions that either were causally related to the product's defective or unreasonably dangerous condition or were substantial factors in causing Barry McCall's catastrophic injuries, including, but not limited to, improperly marketing, packaging, failing to include instructions and/or warnings, assembling, selling, testing, inspecting, installing, maintaining and/or repairing the product. More specifically, it is alleged Wilson-Dismukes, Inc. wantonly sold ZRT Mowers without ROPS, including the Subject Toro ZRT mower, with full knowledge and conscious disregard of the dangers created by selling unreasonably dangerous products, namely ZRT Mowers lacking ROPS, in Mobile County, Alabama.

61.     As a proximate result of the Defendants' wantonness, Barry McCall suffered catastrophic, permanent injuries as described above.

17

DOCUMENT 2

WHEREFORE, Plaintiff Barry McCall demands compensatory and punitive damages from Defendants The Toro Company, Wilson-Dismukes, Inc., and Fictitious Defendants 1-50, in an amount in excess of the minimum jurisdictional limits of this Court, plus interest and costs.

## COUNT V
### (BREACH OF WARRANTIES)

62. Plaintiff Barry McCall reasserts the allegations in paragraphs 1-37 and incorporates the same by reference herein.

63. Defendants The Toro Company, Wilson-Dismukes, Inc., and Fictitious Defendants 1-50, are in the business of selling mowers such as the Subject Toro ZRT Mower.

64. Defendants sold the Subject Toro ZRT Mower in Mobile County, Alabama, that rolled over on Barry McCall, causing catastrophic injuries.

65. Defendants impliedly warranted that the Subject Toro ZTR mower was of merchantable quality and was fit for its particular purpose when put to its ordinary and intended use. Barry McCall was a buyer of the Subject Toro Mower as contemplated under the implied warranty of merchantability and/or implied warranty of fitness for a particular purpose. Alternatively, Barry McCall was the intended third party beneficiary of the implied warranty of merchantability and/or implied warranty of fitness for a particular purpose.

66. Defendants breached these implied warranties in that the Subject Toro ZRT Mower, without Rollover Protections (ROPS), was defective and unreasonably dangerous when put to its intended and ordinary use by Barry McCall.

67. As a proximate result of Defendants' breach of implied warranties, Barry McCall suffered catastrophic, permanent injuries as described above.

68. The acts of the Defendants described in all preceding paragraphs of this Complaint combined and concurred to proximately cause Barry McCall's catastrophic injuries.

DOCUMENT 2

WHEREFORE, Plaintiff Barry McCall, demands compensatory and punitive damages from Defendants The Toro Company, Wilson-Dismukes, Inc., and Fictitious Defendants 1-50, in an amount in excess of the minimum jurisdictional limits of this Court, plus interest and costs.

## COUNT VI
### (LOSS OF CONSORTIUM)

69.     Plaintiff Cheryl McCall reasserts the allegations contained in paragraphs 1-50 of the Complaint.

70.     Cheryl McCall has lost the comfort and society of her husband, Barry McCall, as a result of Defendants' tortious conduct set forth herein.

WHEREFORE, Plaintiff Cheryl McCall demands compensatory and punitive damages from Defendants The Toro Company, Wilson-Dismukes, Inc., and Fictitious Defendants 1-50, in an amount in excess of the minimum jurisdictional limits of this Court, plus interest and costs.

TOBIAS, McCORMICK & COMER, LLC
Attorneys for Plaintiffs

BY:   _/s  Desmond V. Tobias_____
        DESMOND V. TOBIAS (TOB002)
        desi@tmclawyers.com
        JASON S. McCORMICK (MCC118)
        jason@tmclawyers.com
        BRYAN E. COMER (COM015)
        bryan@tmclawyers.com
        1203 Dauphin Street
        Mobile, Alabama 36604
        Telephone:   (251) 432-5001
        Facsimile:    (251) 432-0714

**PLAINTIFFS RESPECTFULLY DEMAND A TRIAL BY JURY.**

_____/s  Desmond V. Tobias_____

19

DOCUMENT 2

**PLEASE SERVE DEFENDANTS AS FOLLOWS:**

**THE TORO COMPANY**                          *VIA CERTIFED MAIL*
8111 Lyndale Avenue South              *RETURN RECEIPT REQUESTED*
Bloomington, MN 55420-1196

**WILSON-DISMUKES, INC.**                      *VIA CERTIFED MAIL*
c/o Registered Agent:  W. Edward Dismukes, Jr.   *RETURN RECEIPT REQUESTED*
2646 Government Blvd.
Mobile, AL 36606