# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| BARRY MCCALL and CHERYL MCCALL, | § § § |
| PLAINTIFFS, | § § |
| v. | § § § |
| THE TORO COMPANY; WILSON DISMUKES, INC., | § § |
| Defendants. | § § § |

1:19-CV-01136-KD-C

REMOVED FROM CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

02-CV-2019-903150

## **REPORT AND RECOMMENDATION**

This matter is before the undersigned, pursuant to 28 U.S.C. § 636(b)(3) and S.D. Ala. Gen. L.R. 72(a)(2)(S), on the plaintiffs' motion to remand this matter to the Circuit Court of Mobile County, Alabama and memorandum of law in support (Doc. 6), filed January 31, 2020; defendant The Toro Company's ("Toro") opposition (Doc. 10), filed February 28, 2020; the plaintiffs' reply to that response (Doc. 12), filed March 6, 2020; and defendant's surreply to plaintiffs' motion to remand (Doc. 16-1), filed March 23, 2020. After careful consideration of the parties' briefing, it is **RECOMMENDED** that the motion be **GRANTED**, and that this matter be **REMANDED** to the Circuit Court of Mobile County, Alabama.

### *Background*

For the Court's present purposes, the primary issue in this case is whether it is possible for the plaintiffs to establish a cause of action against defendant Wilson Dismukes, Inc. ("Wilson Dismukes") under the pleading standards applicable under Alabama law. Plaintiff Barry McCall was injured on April 20, 2019, when a Toro TimeCutter zero-radius

turn ("ZRT") mower, which was sold by Wilson Dismukes, rolled over and crushed him while he operated the mower. Mr. McCall and his wife filed a lawsuit in the Circuit Court of Mobile County, Alabama, on November 26, 2019, in which they assert claims pursuant to Alabama's Extended Manufacturing Liability Doctrine ("AEMLD") against Toro and separate common law causes of action against defendant Wilson Dismukes for negligence and wantonness. Attached to the Complaint (and referenced therein) are articles, videos, and warnings quoting Toro employees, or from Toro itself, stating that rollover protection systems ("ROPS") are highly effective in preventing injury or death in ZRT rollovers.

Defendant Toro timely removed the case to this Court on the basis of diversity, alleging the plaintiffs fraudulently joined Wilson Dismukes, an Alabama corporation, to defeat this Court's jurisdiction because, "under Alabama law, there is no basis for plaintiffs to recover against Wilson-Dismukes." (Doc. 1., ¶ 6). Toro filed the declaration of Edward Dismukes, Jr., Wilson Dismukes' President, in support of the notice of removal. In their motion to remand, plaintiffs argue that the Alabama "Innocent Seller Act" does not exclude the claims plaintiffs raised against Wilson Dismukes since they involve alleged independent acts unrelated to the design or manufacture of the Toro mower. *See* Ala. Code §6-5-521(b)(4) (". . . This subsection is not intended to protect distributors from independent acts unrelated to the product design or manufacture, such as independent acts of negligence, wantonness, warranty violations, or fraud.").

In opposition to the motion to remand, Toro argues that plaintiffs' complaint "is devoid of allegations that state any viable cause of action against Wilson Dismukes" or, alternatively, if the allegations against Wilson Dismukes are sufficiently pled, Toro has negated any allegations related to independent acts unrelated to the product design or

manufacture. Toro filed a second declaration of Mr. Dismukes in support of its opposition to the motion to remand. Plaintiffs' reply presents evidence contrary to Toro's attack on the sufficiency of the complaint to plead independent claims of negligence and wantonness. Plaintiffs also argue Toro has not proven negation – that the Dismukes declarations and plaintiffs' allegations and supporting evidentiary materials present issues of material fact that preclude a fraudulent joinder finding. Toro sought leave, which the Court granted, to file a surreply offering a third declaration from Mr. Dismukes. (Doc. 16). In this third declaration, Mr. Dismukes supplies additional information about the sale of the mower to Mr. McCall. This information includes a "Bob-Cat Mowers Customer Selection Form" (Doc. 16-2) which includes a section specifically covering the ROPS (*Id.*, PageID.431). The form was signed by Barry McCall and initialed in that section where the purchaser refuses to purchase the optional ROPS for $595.00 against the advice of Wilson Dismukes. Mr. Dismukes states that this statement was included in the closing documents not because of any problem with the mower without the rollover system attached but "because [he] saw no downside to a customer purchasing a ROPS system if it was available for the mower, and [he] did not want customers to later claim that [he] told them not to buy [the ROPS]." (*Id.*).

## Standard of Review

An action in state court may be removed to federal court when the federal courts have diversity or federal question jurisdiction. *See* 28 U.S.C §1441(a). When a defendant removes a case to federal court on diversity grounds, a court must remand the matter back to state court if any of the properly joined parties in interest are citizens of the state in which the suit was filed. *See Lincoln Prop. Co. v. Roche*, [546 U.S. 81] (2005) (*citing* 28 U.S.C. §1441(b)). Such a remand is the necessary corollary of a federal district court's diversity jurisdiction, which requires complete diversity of citizenship.

> When a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court. The plaintiff is said to have effectuated a "fraudulent joinder," *see Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997), and a federal court may appropriately assert its removal diversity jurisdiction over the case. A defendant seeking to prove that a co-defendant was fraudulently joined must demonstrate either that: "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Id*. The defendant must make such a showing by clear and convincing evidence. *See Parks v. New York Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962).

*Henderson v. Wash. Nat. Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006).

The burden of establishing fraudulent joinder is a heavy one. *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). The Court must evaluate the parties' factual allegations and submissions in the light most favorable to the plaintiff and resolve all uncertainties about state substantive law in favor of the plaintiff. *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). The Court must make "these determinations based on the plaintiff's pleadings at the time of removal" but may "consider affidavits and deposition transcripts submitted by the parties." *Id*. "If there is even a possibility that a state court would find that the complaint states a cause of action against . . . the resident defendant [], the federal court must find that the joinder was proper and remand the case to state court." *Stillwell v. Allstate Ins. Co.*, 663 F. 3d 1329, 1333 (11th Cir. 2011); *see also Pacheco de Perez*, *supra*, 139 F.3d at 1380 ("Where a plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court."). In other words, "'[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate.'" *Stillwell*, 663 F.3d at 1333 (quoting *Triggs v. John*

*Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998)); *see also Florence v. Crescent Resources, LLC*, 484 F.3d 1293, 1298-99 (11th Cir. 2007) ("We hold that, if there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary.") (internal citations omitted); *Crowe*, 113 F.3d at 1538 ("In reaching its conclusion, this Court cannot 'weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.'") (internal citations omitted)).

### *The Court's Fraudulent Joinder Inquiry*

Here, the Court must determine whether there is a possibility the Plaintiffs have stated a valid cause of action against Wilson Dismukes. If so, the case is due to be remanded to the Circuit Court of Mobile County, Alabama.

*1.   Plaintiffs' allegations against Wilson Dismukes are not excluded by the Innocent Sellers Act.*

Plaintiffs argue their negligence and wantonness counts against Wilson Dismukes fall within the Innocent Sellers Act's savings clause:

> It is the intent of this subsection to protect distributors who are merely conduits of a product. This subsection is not intended to protect distributors from independent acts unrelated to the product design or manufacture, such as independent acts of negligence, wantonness, warranty violations or fraud.

Ala. Code §6-5-521(b)(4).

Count III of Plaintiffs' complaint alleges that Defendant Wilson Dismukes was not merely a conduit but rather committed independent acts or omissions that substantially contributed to Barry McCall's injury. Among Wilson Dismukes' alleged acts of negligence is that of negligently selling the subject mower, given Wilson Dismukes'

5

specialized knowledge as an authorized Toro dealer, about the effectiveness of ROPS in preventing an injury in the event of a ZRT mower rollover. (Doc. 1-1 at PageID.30-31). Count Four contains comparable allegations regarding wantonness. (*Id*. at PageID.31-33).

Toro argues the savings clause does not apply because "only the proscribed claims are brought against Wilson Dismukes." (Doc. 1, PageID.6, n.3). Toro concedes the Alabama legislature did not define "independent act" in the savings clause, and Alabama courts have not spoken to this issue either. (Doc. 10, PageID.310). This Court has consistently noted, "[t]he Alabama courts have not construed these new statutes [including Section 6-5-521(b)(4)] and, until they do, their meaning remains uncertain." *Robinson v. Invacare Corp.*, 2013 WL 5567084 at *2 (S.D. Ala. 2013). "Because the Court must 'resolve any uncertainties about the applicable law in the plaintiff's favor,' *Pacheco de Perez*, 139 F.3d at 1380, that uncertainty is fatal to removal." *Id*.; *Zirlott v. Discount Ramps, LLC*, 2019 WL 2866844, *4 n. 1 (S.D. Ala. July 3, 2019).

Plaintiffs' complaint asserts multiple factual allegations against Wilson Dismukes that could result in liability against Wilson Dismukes for selling a product that it knew or should have known to be dangerous. Plaintiffs' claims against Wilson Dismukes in this case are very similar to the plaintiff's claims against a seller in *Lazenby v. ExMark Mfg. Co., Inc.*, 2012 WL 3231331, *3 (M.D. Ala. Aug. 6, 2012), in which the court noted:

> The decision to stock and sell a product that was known to be likely or probable to cause injury could constitute an independent act of wantonness that is separate from any act related to the design or manufacture of the product itself. That theory is that it is not the particular design flaw of the product that is the basis for the claim, but the decision of the defendant to sell a product (any product) it knows to be unreasonably dangerous.

All federal opinions reviewed by the Court have reached a similar conclusion, and Defendants have not identified any case authority that reached a contrary conclusion.

This Court's review of the complaint and evidentiary materials in support of Plaintiffs' motion to remand reveal colorable claims against Wilson Dismukes, including that Wilson Dismukes knew or should have known the mower was unreasonably dangerous without ROPS, and Wilson Dismukes acted negligently or wantonly in selling a product it knew was unsafe. Applying the standards listed above, this Court finds Plaintiffs claims are not precluded by the Innocent Sellers Act. Plaintiffs have raised independent causes of action against Wilson Dismukes that are separate from those involving the design and manufacture of the subject mower. At the very least, a possibility remains that Plaintiffs stated an arguable claim against Wilson Dismukes. Thus, this case should be remanded to the Circuit Court of Mobile County, Alabama.

2.  *Defendants have not proven negation to defeat Plaintiffs' factual allegations.*

The Eleventh Circuit has consistently explained that a fraudulent joinder analysis is "'based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties.'" *Legg*, *supra*, 428 F.3d at 1323 (quoting *Pacheco de Perez*, 139 F.3d at 1380). Much like a summary judgment analysis, however, factual disputes are resolved in favor of the plaintiff. *Id*. (citing *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989)).

Toro attempts to refute the factual allegations in Plaintiffs' complaint with three declarations by Mr. Edward Dismukes, the owner of Wilson Dismukes. The Dismukes' declarations primarily make the factual assertion that Mr. Dismukes was unaware of any danger associated with the subject ZRT mower because it was a "residential" mower, as opposed to a "commercial" mower, and thus, safe without ROPS.

Plaintiffs respond with evidence disputing Mr. Dismukes' statements in his declarations. Plaintiffs submitted the declaration of Thomas A. Berry, a licensed professional engineer, who stated there is no meaningful distinction between "commercial" and "residential" ZRT mowers with respect to the need for ROPS, and that the dangers from rollovers are the same for both types of ZRT mowers. (Doc.11-5).

Additionally, Plaintiffs attached exhibits to their complaint, motion, and reply including articles, videos, and warnings from Toro dating to the early 2000s discussing how ROPS are highly effective in preventing serious injury or death in rollover accidents. Additionally, Plaintiffs' evidentiary materials show: (i) Wilson Dismukes has been a licensed Toro mower dealer for many years; (ii) Wilson Dismukes has specialized knowledge about Toro mowers as a Toro authorized dealer and service center; (iii) Wilson Dismukes regularly sells more expensive mowers with ROPS, and sells ROPS kits for more expensive Toro mowers; and (iv) Wilson Dismukes knew the subject mower did not have ROPS when it was sold.

It appears that Toro's arguments against remand essentially call for the Court to conduct an in-depth weighing of the merits of McCall's claims. This suggestion is resisted, however, because binding precedent forecloses the Court from doing so in this context. *See Pacheco de Perez*, 139 F.3d at 1380-81 ("In a fraudulent joinder inquiry, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law."). The three Dismukes declarations do not negate the allegations in the complaint or plaintiffs' evidentiary submissions. In fact, a portion of his statements are supportive of allegations that the importance of a ROPS attachment was known to Wilson Dismukes and not properly shared with its customers. For a reason to be

established, Wilson Dismukes registered a written decision by its customers to eight select or reject the ROPS attachment.

Plaintiffs have presented substantial evidence of material facts to be resolved in response to Toro's factual submissions. At this stage, it is required that these factual disputes be resolved in favor of the Plaintiffs. *Legg*, *supra*, 428 F.3d at 1323. Under this standard, the Defendants have not proven by clear and convincing evidence that no Alabama court could find the complaint sufficient. Plaintiffs' complaint and evidentiary submissions preclude this Court from finding Wilson Dismukes was fraudulently joined.

### *Conclusion*

After careful consideration of the parties' briefing, and for the reasons set forth above – namely, that Toro has failed to carry the heavy burden to establish by clear and convincing evidence that, when the evidence is viewed in the light most favorable to the plaintiffs and the Court resolves all uncertainties of state law in the plaintiffs' favor, there is no possibility that the Circuit Court could find that the plaintiffs' complaint fails to state a claim against Wilson Dismukes. Therefore, it is **RECOMMENDED** that the motion (Doc. 6) be **GRANTED**, and that this matter be **REMANDED** to the Circuit Court of Mobile County, Alabama.

### **NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a

report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE AND ENTERED this 7th day of April 2020.

/s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE